IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL TODD BURLINGAME,

       **Plaintiff,**

  vs.                                       Civil Action 2:11-CV-817
                                                        Judge Sargus
                                                        Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

       **Defendant.**

## REPORT AND RECOMMENDATION

### I.
### Introduction and Background

This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 13 and the Commissioner's *Memorandum in Opposition*, Doc. No. 16.

Plaintiff Michael Todd Burlingame filed his application for benefits on September 8, 2009, alleging that he has been disabled since May 25, 2009, as a result of a heart condition and acid reflux disease. *PAGEID* 136-37, 155. The application was denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on November 30, 2010, at which plaintiff, represented by counsel, appeared and testified, as did Eric W. Pruitt, who testified as a vocational expert. In a decision dated December 16, 2010, the administrative law judge found that, despite plaintiff's severe impairments, plaintiff can nevertheless perform jobs that exist in significant numbers in the national economy and that he is therefore not disabled within the

meaning of the Social Security Act. *PAGEID* 50-59. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 29, 2011. *PAGEID* 41-43.

Plaintiff was 45 years of age on the date the administrative law judge issued his administrative decision. Plaintiff has a ninth grade, "limited," education and prior relevant work experience as a mason, brick layer and brick layer supervisor. *PAGEID* 57, 71, 150-52, 160. Plaintiff was last insured for disability insurance purposes on September 30, 2010. At the time of the administrative hearing, plaintiff was performing part-time masonry work, although the administrative law judge found that this activity did not meet the income requirements for substantial gainful activity. *PAGEID* 52.

Plaintiff suffered an episode of ventricular fibrillation and cardiac arrest on May 25, 2009. *See PAGEID* 245-95. After undergoing an internal cardiac defibrillator insertion, he was discharged on June 4, 2009 with diagnoses of cardiac arrest, alcohol abuse, cardiomyopathy and bacterial pneumonia. *PageID* 251.

Plaintiff testified at the administrative hearing that the greatest impediment to his ability to return to work is fatigue. *PAGEID* 71-72. He naps every day. *PAGEID* 74. He also suffers severe memory problems because of the lack of oxygen that he experienced during his cardiac episode. He must rely on his wife to remind him to take his medications. *PAGEID* 75. His concentration is also impaired: "I"ll drift a lot," *PAGEID* 76, although he can follow television shows, *PAGEID* 75. Plaintiff can drive, *PAGEID* 70; he has difficulty reading. P*AGEID* 71. He experiences headaches, which last a couple hours, *PAGEID* 77, although he is not sure that his medications cause those headaches. *PAGEID* 72. He estimates that he can lift 40 pounds, *id.*, or "a handful of brick," *PAGEID* 78, although not repetitively. *PAGEID*

78. He can still engage in many of his usual activities, such as yard work, although it now takes him longer to complete those chores. *PAGEID* 73. He socializes with friends and neighbors "a couple times a week." *Id*. He is limited by fatigue to standing for one-half hour. *PAGEID* 77-78.

## II.
### The Medical Evidence of Record

Plaintiff's treating cardiovascular specialist is Anthony T. Chapekis, M.D. On October 4, 2009, Dr. Chapekis noted that plaintiff had done reasonably well since his hospitalization although his anoxic brain injury left him with attention problems and memory loss. *PAGEID* 302, 340-41. Plaintiff had no clear limiting exertional symptoms, although he continued to experience fatigue. *Id.* From a cardiac standpoint, plaintiff was quite stable. *Id.*

Plaintiff was examined by clinical neuropsychologist Ken Bain, Ph.D., in November and December 2009 upon referral by Dr. Chapekis. *PAGEID* 362-67. Dr. Bain diagnosed amnestic disorder and anoxic brain injury secondary to cardiac arrest. Dr. Bain noted evidence of moderate problems with word-finding capabilities although speech was coherent and relevant. *PAGEID* 363. Auditory comprehension was normal, although long-term semantic recall was moderately to severely impaired in the areas of vocabulary knowledge and general fund of information. *Id*. Test performance improved with cueing, which indicated significant retrieval problems. *Id*. Visual attention was superior; auditory attention was noticeably lower. *Id*. There were deficits in the area of distractibility and recent memory was limited. *PAGEID* 363-64. There were mild to moderate deficits in sequencing, organization and speed of information processing, but performance was average in the areas of social judgment, abstract verbal and mathematical

3

reasoning, constructional praxis and word generation capabilities. *PAGEID* 364-65. There were no significant neurobehavioral problems in the areas of preservation, impulsivity, inappropriate social behavior or impaired self-awareness. *PAGEID* 365. Range of affect was normal and plaintiff displayed an appropriate sense of humor. Reality testing was intact; there was no evidence of bizarre ideation. *Id*. According to Dr. Bain, plaintiff would be unable to return to his job as a mason on a full-time basis because of his cognitive difficulties with attention, recent memory functioning and speed of information processing and because of his problem with endurance. *PAGEID* 366. This same combination of cognitive and physical deficits arising from the May 2009 cardiac episode would preclude any full-time competitive employment for at least another nine to twelve months. *Id.* "It remains to be seen to what extent his cognitive deficits may improve significantly to enable him to handle the cognitive demands of his former job." *Id.* Dr. Bain referred plaintiff to the Bureau of Vocational Rehabilitation to explore other types of employment, *PAGEID* 366-67, although Dr. Bain suggested that plaintiff's history of a learning disability and his lack of a high school diploma, combined with his physical and cognitive deficits, might preclude any type of full-time competitive employment. *PAGEID* 367.

State agency psychologist Todd Finnerty, Psy.D., reviewed the record and completed a psychiatric review technique form in January 2010. *PAGEID* 374-87. Considering plaintiff's diagnosed amnestic anoxic brain injury secondary to a cardiac arrest by reference to Listing 12.02 (Organic Mental Disorders), *PAGEID* 374,[1] Dr. Finnerty concluded that plaintiff did not meet the "B" criteria of the Listing because he had only a mild restriction in his activities of daily living, mild difficulties in maintaining social

---

[1] Dr. Finnerty also considered Listing 12.09 (Substance Addiction Disorders). *PAGEID* 374.

4

functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. *PAGEID* 384. Dr. Finnerty also completed a mental residual functional capacity assessment in which he concluded that plaintiff would be moderately impaired in his abilities to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to make simple work-related decisions, to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to respond appropriately to changes in the work setting. *PAGEID* 477-78. Dr. Finnerty found that plaintiff's statements were only partially credible because he apparently failed to report his history of alcohol abuse to Dr. Bain. *PAGEID* 479. According to Dr. Finnerty, plaintiff would have difficulty running a business and working with customers but that, as evidenced by plaintiff's activities of daily living and Dr. Bain's testing, plaintiff retained the capacity to perform simple, repetitive tasks without fast paced production quotas. *Id.* Dr. Finnerty also found that Dr. Bain's assessment of plaintiff's condition was inconsistent with plaintiff's standardized test scores. *Id.* In March 2010, Roseann Umana, Ph.D., affirmed Dr. Finnerty's assessment. *PAGEID* 396.

In January 2010, the file was reviewed by state agency physician Anton Kreihofner, M.D., *PAGEID* 388-95, who opined that plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds and sit, stand or walk for up to 6 hours in an 8-hour workday. Plaintiff could only occasionally climb ramps and stairs and balance and could never climb ladders, ropes and scaffolds. Plaintiff should avoid all exposure to hazards, including machinery and heights. *PAGEID* 392. In May 2010, Ralph

5

Graham, M.D., another state agency physician, affirmed Dr. Freihofner's assessment. *PAGEID* 397.

In September 2010, Dr. Chapekis reported that plaintiff's anoxic brain injury continued to plague him. The doctor discontinued plaintiff's prescribed statin medication because of plaintiff's ill defined complaints of myalgias and muscle weakness, notwithstanding plaintiff's continued hyperlipidemia. Dr. Chapekis also noted complaints of atypical chest pain. Dr. Chapekis recommended further testing and re-evaluation by a neuropsychologist given changes in his mental status. *PAGEID* 446.[2]

## III.

### Administrative Decision

In his decision, the administrative law judge found that plaintiff's severe impairments consist of amnestic disorder secondary to cardiac arrest with anoxia, and cardiomyopathy with defibrillator installed. *PAGEID* 52. Finding that plaintiff does not have an impairment or combination of impairments that meets or medically equals any listed impairment, *PAGEID* 53, the administrative law judge went on to find that, through the date that his insured status lapsed, plaintiff retained the residual functional capacity to perform light work limited to simple tasks

---

[2] After the administrative law judge issued his unfavorable decision, plaintiff's counsel submitted additional materials to the Appeals Council. *PAGEID* 225-229. Included in those materials are a letter from plaintiff's wife, dated February 15, 2011 and describing the effects of plaintiff's claimed fatigue and cognitive impairments, *PAGEID* 226, and notes from a February 21, 2011 office visit with Steven D. Nelson, M.D., which – apart from an elevated blood pressure reading – reflects essentially negative findings. *PAGEID* 227-29. Evidence submitted to the Appeals Council may not be considered by the District Court for purposes of substantial evidence review of the administrative law judge's decision. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *see also Cline v. Comm'r of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). Moreover, plaintiff does not explain why testimony or other information from plaintiff's wife was not submitted to the administrative law judge. In any event, plaintiff does not ask for remand of the action pursuant to Sentence 6 of 42 U.S.C. § 405(g) for consideration of new and material evidence.

featuring no production quotas. *PAGEID* 55. Relying on the vocational expert's testimony, the administrative law judge also found that, although plaintiff could not perform any past relevant work, he was able to perform a significant number of jobs in the national economy, including such light jobs as textile inspector, mail clerk and packing machine inspector and such sedentary jobs as automatic grinding machine operator, dowel inspector and food and beverage order clerk. *PAGEID* 57-58. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Act at any time prior to the lapse of his insured status. *PAGEID* 58.

## IV.

### Discussion

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d

1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

In his *Statement of Errors*, plaintiff contends that the administrative law judge violated the "treating physician rule" in his evaluation of Dr. Bain's opinions and instead substituted his own lay opinion. In a related argument, plaintiff also contends that the administrative law judge failed to include all of plaintiff's limitations in the hypotheticals posed to the vocational expert. Plaintiff also argues that it was improper to reject Dr. Bain's opinions without also securing the testimony at the hearing of an expert able to address the severity of plaintiff's psychological impairments. Finally, plaintiff challenges the administrative law judge's credibility assessment.

1. <u>Evaluation of Dr. Bain's Opinions</u>

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to determine how much weight the opinion is entitled to by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009); *Wilson, at* 544. Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.,* reasons that are "sufficiently specific to make clear to any subsequent

8

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007), citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. This special treatment afforded to the opinions of treating providers recognizes that

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* See also *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

The administrative law judge did not characterize Dr. Bain as a treating provider but instead referred to the neuropsychologist as a "consultative examin[er]." PAGEID 53. A treating provider is a claimant's "'own physician, psychologist, or other acceptable medical source who provides [a claimant] . . . with medical treatment or evaluation and *who has, or has had, an ongoing treatment relationship with you.*'" *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 F. App'x 496, 506 (6th Cir. Feb. 9, 2006), quoting 20 C.F.R. § 404.1502 [emphasis in original]. Generally, the United States Court of Appeals for the Sixth Circuit has declined to find that an ongoing treatment relationship exists after just two or three examinations. *See, e.g.*, *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *9 (6th Cir. Nov. 15, 2000) (finding that a doctor did not qualify as a treating source and did not have an ongoing treatment relationship with the claimant even though the doctor had examined claimant three times over a two-year period); *Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th

9

Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimant's] condition."). *See also Helm v. Comm'r of Soc. Sec.*, Case No. 5025, 2011 WL 13918, at *3 n.3 (6th Cir. Jan. 4, 2011) (noting that "it is questionable whether a physician who examines a patient only three times over a four-month period is a treating source – as opposed to a nontreating (but examining) source"). In this case, Dr. Bain offered his opinions on January 4, 2010 after administering tests in November and December 2009. *PAGEID* 362. In the opinion of this Court, Dr. Bain's relationship with plaintiff was properly characterized as that of a consultative examiner rather than that of a treating provider whose on-going treating relationship provides the longitudinal insight that warrants the special deference accorded the opinions of treating providers. The administrative law judge did not, therefore err, in failing to accord controlling weight to Dr. Bain's opinions.

Although Dr. Bain's opinions were not entitled to the deference accorded to those of treating providers, the administrative law judge was nevertheless obliged to consider those opinions. 20 C.F.R. § 404.1527(a)(2). In the case presently before the Court, the administrative law judge found, first, that Dr. Bain's opinions "appeared to be primarily considering [plaintiff's] past employment." *PAGEID* 56. In any event, the administrative law judge found, Dr. Bain's opinions were inconsistent with plaintiff's activities and his own testimony. *Id*. The Court concludes that these findings enjoy substantial support in the record.

The Court also disagrees with plaintiff's contention that the administrative law judge improperly substituted his own evaluation of the medical evidence when he found that plaintiff has the residual functional capacity to perform a wide, but limited, range of light work. The residual functional capacity

10

determination is expressly reserved to the Commissioner. 20 C.F.R. §§404.1527(e)(2), 404.1546. The report and opinion of the state agency psychologist, Dr. Finnerty, that plaintiff could perform simple, repetitive tasks without fast paced production quotas, P*AGEID* 479, provides substantial support for the administrative law judge's residual functional capacity assessment.

2. <u>Hypotheticals Posed to the Vocational Expert</u>

In yet another argument related to the administrative law judge's assessment of plaintiff's residual functional capacity, plaintiff argues that the hypotheticals posed to the vocational expert were flawed because they did not include "more limitations regarding [plaintiff's] memory, concentration and ability to stay on task . . . ." *Statement of Errors*, p. 14.

As the Court noted *supra*, the administrative law judge's assessment of plaintiff's residual functional capacity enjoys substantial support in the record. Thus, a hypothetical that includes the limitations found by the administrative law judge is properly posed to the vocational expert. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)(the Commissioner may rely on vocational testimony based on a hypothetical that "accurately describes the plaintiff in all significant, relevant respects. . ."). *Accord Varley v. Sec. of Health & Human Svcs.*, 820 F.2d 777, 779 (6th Cir.1987). In formulating a proper hypothetical, an administrative law judge must incorporate only those limitations that he has found to be credible. *Stanley v. Secretary of Health & Human Servs.,* 39 F.3d 115, 118-19 (6th Cir. 1994).

In the case presently before the Court, the administrative law judge included in the hypotheticals all the limitations found by him. Because, for the reasons stated supra, the Court concludes that those findings enjoy substantial support in the record, the Court also concludes that the administrative law

11

judge did not err in relying on the testimony of the vocational expert.

3. <u>Failure to Call a Medical Expert</u>

Plaintiff also argues that the administrative law judge should have secured the assistance of a medical expert to evaluate plaintiff's impairments by reference to Listing 12.02, which addresses organic mental disorders. The primary function of a medical expert is to explain medical terms and the findings in medical reports in more complex cases in terms that the administrative law judge, a who is not a medical professional, may understand. *See, Richardson v. Perales*, 402 U.S. 389, 408 (1972). The Commissioner's regulations provide that an administrative law judge "may also ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. § 404,1527(f)(2)(iii).

The Commissioner's operations manual indicates that it falls within the administrative law judge's discretion whether to seek the assistance of a medical expert. HALLEX I-2-5-32 (September 28, 2005). "The primary reason an administrative law judge may obtain medical expert opinion is to gain information which will help him or her evaluate the medical evidence in a case, and determine whether the claimant is disabled or blind." *Id.* The operations manual indicates that an administrative law judge "may need to obtain an medical expert's opinion" in the following circumstances:

- the administrative law judge is determining whether a claimant's impairment(s) meets a listed impairment(s);
- the administrative law judge is determining the usual dosage and effect of drugs and other forms of therapy;
- the administrative law judge is assessing a claimant's failure to follow prescribed treatment;

- the administrative law judge is determining the degree of severity of a claimant's physical or mental impairment;
- the administrative law judge has reasonable doubt about the adequacy of the medical record in a case, and believes that an ME may be able to suggest additional relevant evidence;
- the medical evidence is conflicting or confusing, and the administrative law judge believes a medical expert may be able to clarify and explain the evidence or help resolve a conflict;
- the significance of clinical or laboratory findings in the record is not clear, and the administrative law judge believes a medical expert may be able to explain the findings and assist the administrative law judge in assessing their clinical significance;
- the administrative law judge is determining the claimant's residual functional capacity, e.g., the administrative law judge may ask the medical expert to explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record;
- the administrative law judge has a question about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time, e.g., the administrative law judge may ask the medical expert to explain the nature of an impairment and identify any medically contraindicated activities; or
- the administrative law judge desires expert medical opinion regarding the onset of an impairment.

HALLEX I-2-5-34 (September 28, 2005). An administrative law judge's decision whether a medical expert is necessary is inherently discretionary. An administrative law judge abuses his discretion only when the testimony of a medical expert is "required for the discharge of the administrative law judge's duty to conduct a full inquiry into the claimant's allegations. *See* 20 C.F.R. § 416.1444." *Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir. 1989). *See also, Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An administrative law judge has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary").

13

Here, the administrative law judge did not abuse his discretion in failing to call a medical – or psychological – expert to testify at the administrative hearing. The administrative record includes the opinions of the two state agency psychologists who, after reviewing the record and Dr. Bain's opinions, concluded that plaintiff's mental impairments do not meet or equal any listed impairment, including Listing 12.02.  *See PAGEID* 374.  In short, the administrative law judge did not err in this regard.

4. <u>The Administrative Law Judge's Credibility Determination</u>

Finally, plaintiff contends that the administrative law judge erred in his evaluation of plaintiff's credibility. A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). *See also* 42 U.S.C. §423(d)(5)(A). In evaluating subjective complaints, the Court looks to the record to determine whether there is objective medical evidence of an underlying medical condition. If so, then, the Court must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Stanley v. Secretary of Health and Human Services,* 29 F.3d 115, 117 (6th Cir. 1994) (*quoting Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986).

Plaintiff contends that he cannot work because of fatigue and memory problems. The administrative law judge found that plaintiff's allegations "are not entirely credible":

> The claimant testified that he is currently working on a part-time basis as a bricklayer and that [he] earned between $7000 and $8000 this year.  He does not address his ability to perform simpler jobs that require less thought and exertion.  He is capable of performing

14

> many functional activities. He is able to
> drive, stand, and walk. He is able to attend
> to his personal care. He does many activities
> of daily living, although he alleges some of
> them take longer now. He is also able to
> fish, hunt, play pool, and socialize with
> friends and neighbors.

*PAGEID* 55. The administrative law judge carefully considered the evidence, applied the appropriate standard for considering plaintiff's subjective allegations and made findings regarding plaintiff's credibility that enjoy substantial support in the record. The Court is without authority to disturb those findings.

In short, the Court has carefully reviewed the record in this action and concludes that the decision of the administrative law judge is supported by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**


If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date July 19, 2012                    *s/Norah McCann King*
                                      Norah McCann King
                                      United States Magistrate Judge